USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __3/5/2020_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDON MIGUEL BUENO DIAZ,

        Plaintiff,

-against-

JOSEPH MERCURIO,

        Defendant.

19 Civ. 1319 (AT)

**MEMORANDUM
AND ORDER**

ANALISA TORRES, District Judge:

    Plaintiff *pro se*, Edon Miguel Bueno Diaz, alleges that Defendant, Joseph Mercurio, an agent of the United States Drug Enforcement Administration (the "DEA"), was among several DEA officers who arrested Plaintiff pursuant to a warrant. Compl. at 6–7,[1] ECF No. 1. Plaintiff claims that the officers beat him, and that Defendant spat in his face. *Id.* at 4, 7. Now before the Court is Defendant's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 14. For the reasons stated below, the motion is GRANTED in part and DENIED in part.

## BACKGROUND

I.   Facts

    The following facts are taken from the complaint and "are presumed to be true for purposes of considering a motion to dismiss for failure to state a claim." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 398 (2d Cir. 2015).

    On July 27, 2017, at approximately 7:40 p.m., Plaintiff was parking his car in front of his residence on East 173rd Street in the Bronx, when at least four DEA agents surrounded his vehicle. Compl. at 3–4, 6–8. The agents brandished guns and banged on the windows in an

---

[1] Citations to the complaint refer to the ECF page numbers.

apparent attempt to break them. *Id.* at 4, 8. Plaintiff's mother, girlfriend, and children were also in the vehicle, and began screaming. *Id.* at 8. Plaintiff opened his car door, and the agents pulled him out of the vehicle. *Id.* at 4, 7. The officers began beating him: punching, kicking, choking, and hitting Plaintiff with the butts of their pistols, to the point where Plaintiff urinated on himself. *Id.* Plaintiff alleges that, as he was being beaten, he was in handcuffs, in front of his family, who were "hysterical and scared." *Id.* at 4. Plaintiff claims he was taken to the agents' vehicle, where he was asked, "Dominican, fucking Dominican where are the drugs," and that at this question, Defendant spat in his face. *Id.* at 4, 7.

The day after his arrest, Plaintiff had an initial appearance before the Honorable Katharine H. Parker. *Id.* at 9. He alleges that Judge Parker noticed his injuries and asked, "Why ha[sn't] he been taken to a hospital?" *Id.* Plaintiff claims that he suffered fractured ribs, for which he was hospitalized and prescribed pain medication, as well as bruises and minor cuts. *Id.* at 4.

Plaintiff alleges that the events surrounding the arrest caused him mental and physical pain. *Id.* He states that that his children are traumatized, unable to sleep and function, and that his mother's health has deteriorated due to stress from the incident. *Id.* at 9.

Plaintiff brings this action suit seeking compensation for pain and suffering, invoking 42 U.S.C. § 1983. *Id.* at 5, 7.

II. Procedural History

On January 29, 2018, Plaintiff, at the time a pretrial detainee housed at the Metropolitan Correctional Center in Manhattan ("MCC"), delivered the instant complaint to MCC prison authorities for mailing. Compl. at 5, 7. On May 23, 2018, Plaintiff's complaint was received and docketed by the Pro Se Office of the United States District Court for the Eastern District of

New York. *Id.* at 1. On February 8, 2019, the Honorable LaShann DeArcy Hall directed the Clerk of Court to transfer the action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a). ECF No. 5 at 2. On February 19, 2019, the action was assigned to this Court. On June 24, 2019, Defendant filed a motion to dismiss. ECF No. 14. Plaintiff did not file opposition papers.

## DISCUSSION

I. <u>Legal Standard</u>

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). A plaintiff is not required to provide "detailed factual allegations," but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Pleadings cannot survive by making "naked assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted).

"When a motion to dismiss is unopposed, the failure to oppose itself does not justify dismissal." *Howard v. City of New York*, No. 11 Civ. 5899, 2012 WL 5816976, at *4 (S.D.N.Y. Nov. 14, 2012). Instead, a court must assess the sufficiency of the complaint "based on its own reading of the pleading and knowledge of the law." *Goldberg v. Danaher*, 599 F.3d 181, 184 (2d Cir. 2010) (internal quotation marks and citation omitted). "If a complaint is sufficient to state a

claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000).

*Pro se* plaintiffs receive special solicitude from courts. Courts must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks and citations omitted).

II. Analysis

   A. Section 1983

Defendant argues that Plaintiff fails to state a claim pursuant to 42 U.S.C. § 1983, because the cause of action applies to state, not federal officers. Def. Mem. at 1, ECF No. 15. Defendant is alleged to be a federal officer—specifically, a DEA agent. "[A]n action brought pursuant to 42 U.S.C. § 1983 cannot lie against federal officers." *Davis v. United States*, No. 03 Civ. 1800, 2004 WL 324880, at *10 (S.D.N.Y. Feb. 19, 2004) (internal quotation marks, citation, and alterations omitted). Accordingly, Plaintiff's § 1983 claim is DISMISSED.

   B. *Bivens*

Next, the Court considers whether Plaintiff is entitled to damages, pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for allegations of excessive force in contravention of the Fourth Amendment. *See Tavarez v. Reno*, 54 F.3d 109, 109–10 (2d Cir. 1995) (noting that the district court properly considered an action brought under § 1983 as an action under *Bivens*); *Spinale v. U.S. Dep't of Agric.*, 621 F. Supp. 2d 112, 119 (S.D.N.Y. 2009) ("Where a plaintiff brings a Section 1983 claim against federal defendants in error, the proper course of action is to construe the complaint as stating a cause of action under [*Bivens*]."). Defendant argues that such a claim is foreclosed by *Ziglar v. Abbasi*,

137 S. Ct. 1843 (2017). Def. Mem. at 2–11. The Court disagrees, and concludes that *Abbasi* does not compel the adoption of Defendant's unduly narrow reading of *Bivens*.

1. The *Abbasi* Framework

Since passing a statute later codified at 42 U.S.C. § 1983 that allowed for damages for constitutional violations by officials acting under color of state law, and in the one hundred years leading up to *Bivens*, Congress has not enacted an analogous statute for federal officials. *Abbasi*, 137 S. Ct. at 1854. Against this backdrop, the Supreme Court in 1971 decided *Bivens*. In *Bivens*, the Supreme Court held that the petitioner, a man handcuffed in his home without a warrant by unnamed narcotics officers, had a right of action under the Fourth Amendment's prohibition of unreasonable searches and seizures. 403 U.S. at 397. The Supreme Court held that damages could lie against the federal officials for constitutional violations, absent statutory authorization, because such a remedy could be judicially implied under the Constitution. *See Bivens*, 403 U.S. at 399 (Harlan, J., concurring).

Subsequently, the Supreme Court has recognized only two additional contexts for *Bivens* remedies: one in a case of sex discrimination brought by a federal employee under Fifth Amendment due process, *see Davis v. Passman*, 442 U.S. 228 (1979), and the second in a case where prison officials' failure to treat an inmate's asthma led to his death, for violations of the Eighth Amendment's prohibition on cruel and unusual punishment, *see Carlson v. Green*, 446 U.S. 14 (1980). The Supreme Court emphasized in *Abbasi* that "[t]hese three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." 137 S. Ct. at 1855.

Following *Bivens*, *Davis*, and *Carlson*, the Supreme Court has retreated from recognizing implied damages remedies under the Constitution. *See id.* at 1855–56 (collecting cases). The

5

Supreme Court now cautions against creating additional implied remedies as a matter of course, "no matter how desirable that might be as a policy matter, or how compatible with the statute" or the constitutional provision invoked. *Id.* at 1856 (internal quotation marks and citation omitted). "Given the notable change in the Court's approach to recognizing implied causes of action, . . . the Court has made clear that expanding the *Bivens* remedy is now a disfavored judicial activity." *Id.* at 1857 (internal quotation marks and citation omitted).

In *Abbasi*, the Supreme Court clarified the two-step framework for determining whether a *Bivens* remedy may properly be implied. First, a court must decide whether a plaintiff seeks damages in a new *Bivens* context. *See id.* at 1859–60. To do so, the court must evaluate whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Id.* at 1859. Several factors may be relevant to this inquiry, including:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860.

If the case does not present a new *Bivens* context, then such relief is not precluded, and the court may evaluate the claim for damages on the merits. If, however, the court determines that the context is new, then it must proceed to analyze whether there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* at 1857 (internal quotation marks and citations omitted).

### 2. Application of the Two-Part Test

Here, the Court concludes that the case does not present a new *Bivens* context. It also holds, in the alternative, that even if this case presented a new *Bivens* context, special factors

6

would not command hesitation in recognizing a damages remedy.

### a. New Context Analysis

*Abbasi* addressed claims brought by non-U.S. citizens, detained after the September 11, 2001 attacks, against officers in the Department of Justice and the wardens of the facility where they were imprisoned. 137 S. Ct. at 1851–52. The detainees brought suit against the U.S. Attorney General, the Director of the Federal Bureau of Investigation, the Immigration and Naturalization Service Commissioner, as well as a federal facility's warden and assistant warden, alleging that the plaintiffs' detention, and abuses suffered in the course of that confinement, violated their constitutional rights. *Id.* at 1853–54. The detainees sought damages, invoking *Bivens*. *Id.* at 1851–52. The Supreme Court held, however, that the detainees' Fifth Amendment substantive due process claims arose in a new *Bivens* context, because, among other things, the claims brought by the detainees implicated highly sensitive national security interests. *Id.* at 1860.

However, in so ruling, the Supreme Court emphasized that it did "not intend[ ] to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose." *Id.* at 1856. *Bivens* is "settled law" and a "fixed principle" in the "common and recurrent sphere of law enforcement." *Id.* at 1857. Though the Second Circuit has yet to analyze a Fourth Amendment excessive force claim post-*Abbasi*, the Sixth Circuit recently concluded that *Abbasi* "is not about restricting the core of *Bivens*," but rather "continues the Supreme Court's trend of cautioning against expanding its outer reaches." *Jacobs v. Alam*, 915 F.3d 1028, 1037 (6th Cir. 2019); *id.* at 1038 (holding that the claims brought by the plaintiff were "run-of-the-mill challenges to 'standard law enforcement operations' that fall well within *Bivens* itself" (quoting *Abbasi*, 137 S. Ct. at 1861)).

7

The case before this Court is also a run-of-the-mill challenge to a standard law enforcement operation. The allegations do not present a context meaningfully different from *Bivens*. For one, both *Bivens* and this case concern the same type of federal officers: narcotics officers. Compl. at 6; *Bivens*, 403 U.S. at 389. Moreover, the "legal mandate under which the officer was operating" is not meaningfully different, *Abbasi*, 137 S. Ct. at 1860, because the officers in both cases carried out the same category of "official action": an arrest of someone suspected of a narcotics offense. Compl. at 4; *Bivens*, 403 U.S. at 389; *see also Abbasi*, 137 S. Ct. at 1860; *Lehal v. Cent. Falls Det. Facility Corp.*, No. 13 Civ. 3923, 2019 WL 1447261, at *11 (S.D.N.Y. Mar. 15, 2019).

Additionally, at the time of Plaintiff's arrest, there existed substantial "judicial guidance" as to the unconstitutionality of employing excessive force in the course of an arrest. *Abbasi*, 137 S. Ct. at 1860; *see, e.g.*, *Graham v. Conner*, 490 U.S. 386, 395–97 (1989) (setting forth judicial guidance on the prohibition of excessive force by an arresting officer); *Jacobs*, 915 F.3d at 1035–39 (noting that courts have "readily provided guidance to individual line officers for how to comply with the Fourth Amendment while carrying out their police duties"). Further, Defendant does not suggest, nor is it apparent to the Court, that recognizing a *Bivens* remedy in this case would risk a "disruptive intrusion by the Judiciary into the functioning of other branches." *Abbasi*, 137 S. Ct. at 1860.

Defendant argues that the fact that Plaintiff was arrested pursuant to a warrant makes this case meaningfully different from *Bivens*, because "[i]n *Bivens*, plaintiff had the right to be free from arrest and excessive force," whereas "[h]ere, the only right at issue is Plaintiff's right to be free from excessive force." Def. Mem. at 5. Defendant's argument contradicts the holding in *Bivens*. The holding in *Bivens* entitled the arrestee to recover for "*any* injuries he has suffered as

8

a result of the agents' violation of the [Fourth] Amendment," *Bivens*, 403 U.S. at 397 (emphasis added), and explicitly recognized that, among other injuries, the arrestee had alleged "that unreasonable force was employed in making the arrest," *id.* at 389. *Bivens* is not, therefore, meaningfully different on this basis.

Next, Defendant contends that, "given the lack of a warrant [in *Bivens*], the amount of force that could reasonably be used would be significantly different than what is allowed in the course of a valid arrest," but this argument is also unavailing. Def. Mem. at 5. The force alleged in this case is not slight. As Defendant concedes, any force used to effectuate an arrest pursuant to a warrant "must be reasonable." *Id.* (citing *Rodriguez v. Village of Ossining*, 918 F. Supp. 2d 230, 241 (S.D.N.Y. Jan. 14, 2013)). The question of what force may be considered reasonable in any given case is, of course, highly fact-dependent, *see Graham*, 490 U.S. at 396–97, but that alone does not change the applicability of *Bivens*. *Bivens* holds that, in certain circumstances, an individual can seek damages when excessive force is used to effectuate an arrest, and this case falls squarely within that holding.

Last, the Court rejects Defendant's argument that the location of Plaintiff's arrest—in public, rather than in his home—constitutes a meaningful difference from *Bivens*, "where the privacy interest of the Fourth Amendment's protections are strongest." Def. Mem. at 6. As previously stated, *Bivens* held that the plaintiff stated a right to damages for "any" injury suffered from the alleged violation of the Fourth Amendment, including excessive force. 403 U.S. at 397. Defendant's reliance on *Palmieri v. Lynch*, 392 F.3d 73, 81 (2004), a Fourth Amendment case that addressed the objectively reasonable expectation of privacy in an individual's home is, therefore, misplaced, given that Plaintiff's complaint does not invoke the privacy protections of the Fourth Amendment. *See* Def. Mem. at 6.

In sum, "the location of the arrest, and the existence of a warrant . . . should not be characterized as 'potential special factors that previous *Bivens* cases did not consider.'" *Lehal*, 2019 WL 1447261, at \*12 (quoting *Abbasi*, 137 S. Ct. at 1860). Unlike the highly unusual considerations present in *Abbasi*, chief among them national security and the detention of terrorism suspects, the facts here present a "garden variety excessive force case," *Hernandez v. Mesa*, 885 F.3d 811, 814 (5th Cir. 2018), *cert. granted in part*, 139 S. Ct. 2636 (2019), *aff'd*, No. 17-1678, 2020 WL 889193 (Feb. 25, 2020). Recognizing that *Bivens* contemplates the facts alleged here, does "not erode legitimate distinctions between the Fourth Amendment claims that fall within the contours of the *Bivens* decision and those that do not." *Lehal*, 2019 WL 1447261, at \*11. "[I]t has long been the practice of courts in this Circuit to permit *Bivens* claims arising from the use of excessive force in an arrest." *Id.* at \*12 (collecting cases).

The Supreme Court's recent decision in *Hernández v. Mesa*, 589 U.S. \_\_, 2020 WL 889193 (2020), further supports this conclusion. In *Hernández*, the Supreme Court concluded that the cross-border shooting in question posed a new *Bivens* context, different as it was from the Fourth Amendment claim of "unconstitutional arrest and search carried out in New York City" brought in *Bivens*. *Id.* at \*6; *see also id.* at \*7 ("A cross-border shooting is by definition an international incident."). Here, Plaintiff complains of an unconstitutional arrest carried out in New York City. This case is not so far afield.[2]

---

[2] Additionally, other courts in this circuit have permitted excessive force claims under *Bivens* following the *Abbasi* ruling. *See, e.g.*, *Lehal*, 2019 WL 1447261 (concluding that the facts did not present a new *Bivens* context); *Akande v. Philips*, 386 F. Supp. 3d 281, 290 (W.D.N.Y. 2019), *reconsideration denied*, No. 17 Civ. 1243, 2019 WL 5865555 (W.D.N.Y. Nov. 6, 2019) (assuming, without deciding, that the plaintiff stated a *Bivens* cause of action for excessive force under the Fifth Amendment). Courts from other circuits have also recognized such actions post-*Abbasi*. *See, e.g.*, *King v. United States*, 917 F.3d 409, 433–34 (6th Cir. 2019) (finding that plaintiff's Fourth Amendment claim alleging excessive force in effecting arrest on the street outside of a gas station was properly brought under *Bivens*); *Oliva v. United States*, No. 18 Civ. 15, 2019 WL 136909, at \*5 (W.D. Tex. Jan. 8, 2019) (finding that Fourth Amendment claim alleging excessive force during arrest in public arose in *Bivens* context); *cf. Lyles v. United States Marshalls Serv.*, 301 F. Supp. 3d 32, 40–43 (D.D.C. 2018) (addressing, on the merits, Fourth

b.  Special Factors Analysis

In the alternative, the Court holds that, even if this case were considered to present a new *Bivens* context, special factors would not counsel against extending a *Bivens* remedy.

The "special factors" analysis asks whether there are any factors that "cause a court to hesitate before" "allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1858. This inquiry is focused on "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* In answering this question, a court may look to whether Congress has provided an "alternative remedial structure," the existence of which "itself may amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Id.* (internal quotation marks, citation, and brackets omitted).

Defendant argues that the existence of "'any alternative, existing process for protecting the injured party's interest'" may "'amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" Def. Mem. at 6 (quoting *Abbasi*, 137 S. Ct. at 1858 (emphasis added by Defendant)). Defendant contends that Plaintiff's ability to obtain relief under the Federal Tort Claims Act (the "FTCA") precludes him from bringing a *Bivens* action. Def. Mem. at 6–8. The Court disagrees, and concludes that Defendant overreads the alternative remedies reasoning in *Abbasi*.

The Supreme Court has stated that it is "crystal clear" that "Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Carlson*, 446 U.S. at 20. It has been repeatedly emphasized that an FTCA claim is simply not "a substitute for a *Bivens* action." *Bush*

---

Amendment claim under *Bivens* alleging federal officers' use of excessive force in evicting plaintiff from her apartment).

*v. Lucas*, 462 U.S. 367, 378 (1983); *see also Wilkie v. Robbins*, 551 U.S. 537, 553 (2007) (noting that the "FTCA and *Bivens* remedies were 'parallel, complementary causes of action' and that the availability of the former did not preempt the latter" (quoting *Carlson*, 446 U.S. at 20)); *see also, e.g.*, *Linlor v. Polson*, 263 F. Supp. 3d 613, 621 (E.D. Va. 2017) ("[T]he Supreme Court has squarely held that the FTCA does not provide an alternative remedial process bearing on the availability of a *Bivens* remedy." (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001)).

After all, *Bivens* and FTCA actions vindicate different wrongs. *Bivens* remedies vindicate violations of constitutional rights by federal employees, *see Bivens*, 403 U.S. at 395–97, whereas the FTCA permits, among other things, damages for intentional torts inflicted by federal law enforcement officers. *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994) (concluding that a "constitutional tort claim is not 'cognizable'" under the FTCA). The FTCA remains, therefore, an insufficient "protector of the citizens' constitutional rights," *Carlson*, 446 U.S. at 23, and its availability does not alone compel a conclusion that a remedy under *Bivens* is precluded.

To be sure, district courts have disagreed on whether the availability of an FTCA action precludes a *Bivens* remedy in the wake of *Abbasi*. *See Doe v. United States*, 381 F. Supp. 3d 573, 614 (M.D.N.C. 2019) (collecting cases). One district court has, for instance, noted disagreement between *Rivera v. Samilo*, 370 F. Supp. 3d 362 (E.D.N.Y. 2019), decided by a court in the Eastern District of New York, which concluded that the availability of an FTCA remedy bars a *Bivens* remedy, and *Lehal v. Central Falls Detention Facility Corporation*, 2019 WL 1447261, decided by a court in the Southern District of New York, which concluded the opposite. *See Vick v. U.S. Marshals Serv. Deputies Brent Moore, et al.*, No. 19 Civ. 267, 2019 WL 7568227, at *4 n.3 (D.R.I. Oct. 11, 2019), *report and recommendation approved sub nom. Vick v. United States Marshals Serv.*, No. 19 Civ. 267, 2020 WL 161023 (D.R.I. Jan. 13, 2020).

12

Defendant argues this Court should follow *Rivera*, and hold that a *Bivens* remedy should not be recognized because the FTCA provides an adequate alternative remedy. Def. Mem. at 9. The Court disagrees.

*Rivera* concerns a case of alleged excessive force in the course of "a lawful street arrest." 370 F. Supp. 3d at 369. The *Rivera* court concluded that the case, by virtue of the location of the arrest and existence of a warrant, presented a new *Bivens* context, *id.*, and determined that special factors counseled against recognizing a damages remedy, *id.* at 369–70. Specifically, it reasoned that the FTCA provided a sufficient alternative remedy, and that, to the extent the defendant's actions could be deemed to place him outside the scope of his federal employment, redress would be available under state law for assault and battery. *Id.*

The Court declines to adopt the reasoning in *Rivera*. First, *Rivera* fails to account for the Supreme Court's repeated insistence that the FTCA does not preclude a *Bivens* remedy, as discussed above in this section. Notwithstanding *Abbasi*'s observation that "it is possible that the analysis in the Court's three *Bivens* cases might have been different if they were decided today," *Abbasi*, 137 S. Ct. at 1856, the Supreme Court has not specifically called into question its prior analysis regarding the FTCA's availability in *Bivens* actions. The observation in *Abbasi* is, moreover, *obiter dicta*, followed by additional dicta emphasizing that Congress has not acted to abrogate the Supreme Court's prior rulings determining that the availability of a remedy under the FTCA did not prevent recognition of an implied damages remedy under the Constitution. *See id.* ("To be sure, no congressional enactment has disapproved of these decisions.").

The Supreme Court's prior rulings in *Carlson*, 446 U.S. at 20, *Bush*, 462 U.S. at 378, and *Robbins*, 551 U.S. at 553, remain good law. The Court will follow that precedent. *See also Doe*, 381 F. Supp. 3d at 615 ("If the Supreme Court wanted to overrule its earlier precedent in *Abbasi*,

it would have done so explicitly.").

Next, Defendant relies on *Morgan v. Shivers*, No. 14 Civ. 7921, 2018 WL 618451 (S.D.N.Y. Jan. 29, 2018), and *Abdoulaye v. Cimaglia*, 15 Civ. 4921, 2018 WL 1890488 (S.D.N.Y. Mar. 30, 2018), for the proposition that special factors counsel hesitation in expanding *Bivens*. Defendant argues that the "reasoning [of these cases] is equally applicable here." Def. Mem. at 9. The Court disagrees.

*Morgan* is easily distinguished, because it concerns an excessive force claim brought under the Fifth Amendment, and an unlawful search—not seizure—claim under the Fourth Amendment. *Morgan*, 2018 WL 618451, at *5. The court in *Morgan* held that the plaintiff's "Fifth Amendment excessive force and sexual assault claims are meaningfully different from [the] gender discrimination claim raised in *Davis*." *Id.* For the same reason, the special factors analysis in *Morgan* is also inapposite, as the special factors of *Morgan* concerned, among other things, the "the fact that Mr. Morgan's claims ar[o]se in the prison context," *id.* at *6–7, a consideration not present here.

*Abdoulaye* likewise addresses a pretrial detainee's excessive force claim brought under the Fifth Amendment. 2018 WL 1890488, at *6. *Abdoulaye* thus holds limited persuasive force, because its analysis centers on a comparison of the detainee's claim to the Fifth Amendment context in *Davis*, which prohibited sex discrimination. *Id.*

In sum, the Court concludes that, even if this case were considered to present a new context, special factors would not counsel hesitation in recognizing a *Bivens* remedy here. The central question of the special factors analysis is, "'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Abbasi*, 137 S. Ct. at 1857; *see also Hernández*, 2020 WL 889193, at *11–12. Because this case treads the same ground as *Bivens*, the recognition of a

14

damages remedy would not, as the Supreme Court cautioned, be akin to "establish[ing] [a] whole [new] category[y] of cases in which federal officers must defend against personal liability claims," a move more appropriate for action by Congress. *Abbasi*, 137 S. Ct. at 1858. Instead, this case presents a circumstance wholly appropriate for judicial recognition of a *Bivens* remedy.

3. The Merits of the Excessive Force Claim

Having determined that a *Bivens* remedy is not precluded here, the Court turns to whether Plaintiff adequately alleges excessive force under the Fourth Amendment. For the reasons stated below, the Court concludes that Plaintiff does.

a. Personal Involvement

Defendant argues that Plaintiff has not alleged Defendant's personal involvement. Def. Mem. at 11–12. The cases Defendant relies on are, however, inapposite. *See id.* (citing *Iqbal*, 556 U.S. at 676; *Thomas v. Ashcroft*, 470 F.3d 491, 496–97 (2d Cir. 2006)). *Iqbal* and *Thomas* support the proposition that government defendants cannot be held vicariously liable, and an official's personal involvement must be alleged for liability to attach. *See Iqbal*, 556 U.S. at 676; *Thomas*, 470 F.3d at 496–97. Here, however, Defendant is not a high ranking government official who risks being held vicariously liable, but rather a DEA officer alleged to have participated in a routine street arrest.

Defendant may have intended to argue that Plaintiff engaged in improper group pleading in violation of Federal Rule of Civil Procedure 8(a). *See Atuahene v. City of Hartford*, 10 F. App'x. 33, 34 (2d Cir. 2001) (observing that Rule 8 "requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests," and that pleadings fail to meet that minimum where allegations "lump[ ] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct"). Even

15

assuming that Defendant is making a Rule 8 argument, the Court concludes that Plaintiff's allegations are adequate, as they do not fail to give Defendant fair notice of the claims against him. Plaintiff brings a straightforward excessive force case and alleges, in the very least, Defendant's personal involvement in spitting on Plaintiff. *See* Compl. at 4, 7. Moreover, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). Reviewing Plaintiff's complaint with "special solicitude," as the Court must, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted), the Court concludes that Plaintiff alleges the personal involvement of Defendant as one of the "four agents" who participated in Plaintiff's forceful arrest. Compl. at 4.

Of course, to the extent Plaintiff also sues Defendant in his official capacity, such suit is barred by sovereign immunity. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994). But the suit against Defendant in his individual capacity cannot be dismissed for lack of personal involvement.

                b. Excessive Force

The Court now turns to the question of whether Plaintiff adequately alleged excessive force. In *Graham*, the Supreme Court held that "*all* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." 490 U.S. at 395. "Determining whether the force used during an arrest is 'reasonable' requires balancing the 'nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Lennon v. Miller*, 66 F.3d 416, 425

(2d Cir. 1995) (quoting *Graham*, 490 U.S. at 396). "The question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005) (internal quotation marks and citation omitted).

Here, Defendant's actions constitute excessive force. Spitting is not reasonably related to any goals of effectuating a lawful arrest. Moreover, drawing all reasonable inferences in favor of Plaintiff, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007), the Court concludes that it is reasonable to infer that Defendant was one of the four agents who punched, kicked, and otherwise used force on Plaintiff; the complaint is lodged against Defendant, who was one of the several officers who effectuated the arrest, *see* Compl. at 4, 7; *see also Pratt v. City of New York*, 929 F. Supp. 2d 314, 317 (S.D.N.Y. 2013) ("When faced with a pro se complaint, the Court must construe the complaint liberally and interpret it to raise the strongest arguments that it suggests." (quoting *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and alterations omitted))).

Although "not every push or shove" violates the Fourth Amendment, *Graham,* 490 U.S. at 396, Plaintiff claims that he was punched, kicked, choked, hit with the butts of the officers' pistols—to the point that Plaintiff urinated on himself—and he alleges suffering fractured ribs. Compl. at 4, 7. These actions, assumed true for the purposes of deciding the motion to dismiss, exceed reasonable force. *Cf. O'Hara v. City of New York*, 570 F. App'x. 21, 23–24 (2d Cir. 2014) (concluding that, "no reasonable officer . . . could have thought that the law authorized him repeatedly to punch an unarmed, non-menacing 17-year-old in effecting an arrest"); *Konovalchuk v. Cerminaro*, No. 11 Civ. 1344, 2014 WL 272428, at *17 (N.D.N.Y. Jan. 24, 2014) ("Crediting the *pro se* plaintiff's account of the events, as required by the governing law,

the alleged kicking, punching, and stomping carried out by [the officers] would be objectively unreasonable and disproportional to the circumstances confronting those officers."). Plaintiff has stated a claim of excessive force against Defendant.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's claims under 42 U.S.C. § 1983 and against Defendant in his official capacity are DISMISSED. However, Plaintiff's claim for damages pursuant to *Bivens* may proceed against Defendant in his individual capacity.

The Clerk of Court is directed to terminate the motion at ECF No. 14, and mail a copy of this order to Plaintiff *pro se*.

SO ORDERED.

Dated: March 5, 2020
New York, New York

_____
ANALISA TORRES
United States District Judge